IMBRAGUGLIO *v.* STATE.

(In Banc.   June 5, 1944.)

[18 So. (2d) 294.   No. 35593.]

Chas. C. Evans, of Laurel, for appellant.

Greek L. Rice, Attorney-General, by Geo. H. Ethridge, Assistant Attorney-General, for appellee.

· Argued orally by **Chas. C. Evans**, for appellant, and · by **Geo. H. Ethridge**, for appellee.

**Per Curiam.**

The appellant, Philip Imbraguglio, was tried and convicted in the county court of Jones County for violation of Chapter 284, Laws of 1942, Section 2333, Code of 1942, under an affidavit charging him with having wilfully and unlawfully leased or rented a room on or about the 1st day of May, 1943, knowing, or with good reason to know, that it was intended to be used for prostitution. He was thereupon sentenced to serve a term of ninety days in jail and pay a fine of $200 and cost. Upon an appeal to the circuit court the case was affirmed, and from that judgment he has prosecuted an appeal to this court, assigning several grounds of alleged error.

· The proof disclosed that the room was rented to Bertha and Josephine Thiel, who had come to this state from Ohio on or about March 19, 1943; that they were total strangers to the defendant; that their room was not visited by any man, so far as the defendant knew, until the night of May 1, 1943, when he saw, through the open door, two soldiers in the room with these women, all at a time when the four of them were then fully dressed and engaged in no misbehavior. On that occasion he collected another week's rent in advance, called one of the women out of the room and warned her, as he had done when the room was first rented to them, that they could not have any men visit them there. But it further appears that on this occasion the defendant met a civilian, Jackie Killam, at the top of the stairs just outside of the room and advised him that the girls then had dates and that

he would have to come back later. However, he repeated the warning to the women on the next day and emphasized his position that they could have neither soldiers nor any other men come there. Then, either on the next Saturday night, or a week later, a raid was made by the Military Police and local authorities, when two soldiers were found in the room, with the door closed, and when they entered one of the boys had his shirt collar unbuttoned. No other incriminating circumstance, if indeed that was one, was observed on that occasion, the proof being silent as to whether or not the women were then fully dressed. Nor was the defendant shown to have been present on that occasion.

However, the women testified, as witnesses for the state, that during their six weeks stay in this room one of them had three dates and the other had two, and that each of them had engaged in acts of prostitution there on only two occasions.

Over the objection of the defendant, it was shown that one of the soldiers who had visited this room was at the time of the trial, on May 13, 1943, in the State Charity Hospital, at Laurel, being treated for a venereal disease, but without it being shown that he had not visited other women as the probable source of such infection. The admission of this testimony is assigned as error. And, while the court is of the opinion that this testimony was erroneously admitted, a majority of the judges would not reverse the case on that ground.

The proof further disclosed that a few days after the room was first rented to these women they visited Hattiesburg, where one of them was detained in the Health Clinic or jail for five days and the other for twelve days to undergo treatment for venereal disease; that upon their return to Laurel they advised the defendant of their said detention in explanation of their failure to return to their room promptly, but did not advise him of the disease for which they were treated. Objection was made to that portion of this testimony in regard to the witnesses hav-

ing been treated for a venereal disease at Hattiesburg, since the defendant was only advised of the circumstance that they had been detained there by the Health authorities. Some of the Judges are of the opinion that such part of this testimony should not have been admitted in evidence, since it could serve no purpose other than to show that the women were prostitutes, and this fact had already been freely admitted by the women in the outset of their testimony, and that it therefore only served to prejudice the rights of the accused. But a majority of the Judges would not reverse the case on that ground. Nor do they think that the peremptory instruction requested by the defendant should have been granted.

This brings us to a consideration of the error assigned for the granting of one of the two instructions on behalf of the state. One of these instructions was in general terms and informed the jury that if it should believe from the evidence beyond a reasonable doubt that the defendant leased or rented the room knowing, or with good reason to know, that it was intended to be used for prostitution the jury should find him guilty. The second instruction, which is assigned as error, reads: "The court instructs the jury for the State that you do not have to know that the defendant, Philip Imbraguglio, is guilty of the crime charged in the affidavit, but all that is required is that you must believe him to be guilty beyond a reasonable doubt."

It will be noted that this second instruction does not require the jury to believe the defendant guilty "from the evidence." Nor did either of the state's instructions require that the evidence should establish his guilt to the exclusion of every other reasonable hypothesis consistent with innocence, although the state's case was predicated upon circumstantial evidence as to guilty knowledge on the part of the defendant, without any proof of actual knowledge that the room was rented for the purpose of prostitution. However, the correctness

of this instruction is not specifically challenged on the ground last above mentioned.

A majority of the Judges are of the opinion that under the authority of the case of Walters et al. v. State, 176 Miss. 790, 170 So. 539, the omission of the words "from the evidence" in this instruction constitutes reversible error. In discussing a similar instruction in that case the the court said: "The instruction undertook to state what is enough to sustain a conviction, and, standing alone in purporting to tell the jury what is sufficient, it is not cured by any other instruction. Thus standing alone, it is important that the instruction should be technically correct, and it is necessary that it enumerates all essentials, and that the jury must so believe from the evidence in the case."

In the case at bar the circumstances were peculiarly of such a nature as to cause a jury to believe a great deal more than the state was able to prove, circumstantially or otherwise. But verdicts must rest on facts and circumstances testified to, or otherwise shown, and not merely upon what a jury may believe generally.

The only instructions given in favor of the defendant which use the words "from the evidence" or "by the testimony" is one commonly known as the "twelve juror instruction," and another one advising the jurors that they were the judges of the credibility of the witnesses. Therefore the error in the instruction for the state which advised the jury as to "all that is required" to convict was not cured by any other instruction. In the Walters case, supra, the Assistant Attorney-General in his brief called attention to another instruction for the state containing the words "from the evidence," and the court, nevertheless, held that since the instruction complained of "undertook to state what is enough to sustain a conviction," and was the only instruction on that point, the defect was not cured by any other instruction. And we place the reversal of the present case on that ground, without intending to say that such a defect in an instruc-

tion of that character may not be cured by another instruction on the same point containing the omitted words, or that one of a different character may not ordinarily be·cured by others granted.

The cause must be reversed 'and remanded for a new trial. Reversed and remanded.

### DISSENTING OPINION.

**Smith, C. J.,** delivered a dissenting opinion.

The defendant owns a building in the City of Laurel, not far from an army camp and just off of the military reservation. He operates a cafe on the ground floor of this building, and rents the upper rooms, one of which he rented by the week to two prostitutes from Cleveland, Ohio, in which they plied their trade; and the only question for the jury's determination was· whether the appellant knew, or had reason to know, that they were so doing. This court holds that on the evidence that question was for the determination of the jury, but has reversed its verdict solely for the reason that in one of the state's instructions the jury were told that they "must believe him to be guilty beyond a reasonable doubt," instead of that they "must believe him to be guilty from the evidence beyond a reasonable doubt." The instruction should have contained the words "from the evidence"; but their omission therefrom was perfectly harmless, Davis v. Waynesboro Hdw. Co., 151 Miss. 532, 118 So. 541, and could not have misled any man with intelligence enough to qualify as a juror.

When this· jury was empaneled each of its members, in accordance with Section 1793, Code of 1942, swore to try all issues submitted to them by the court, "and true verdicts give *according to the evidence.*" (Italics supplied.) This oath, of course, the juror is supposed to carry with him throughout the trial of·a case. Moreover, the state was given two instructions, one of which re-

quired the jury to believe, from the evidence. The defendant obtained several instructions, one of which charged the jury that "It is your sworn duty to vote for an acquittal of the defendant until you are convinced *from the testimony* beyond a reasonable doubt that he is guilty as charged;" and by another "that the state must prove the defendant guilty beyond a reasonable doubt by trustworthy and credible testimony."

All instructions given the jury should be read together, just as if the court had given one instruction covering all of them. If that is done here, it will appear that the court, after instructing the jury that they must believe the appellant to be guilty beyond a reasonable doubt before they could convict him, then said to them that "It is your sworn duty to vote for the acquittal of the defendant unless you are convinced by *the testimony* beyond a reasonable doubt that he is guilty as charged;" and "the state must prove the defendant guilty beyond a reasonable doubt *by trustworthy and credible evidence.*" (Italics supplied.) If one instruction can cure an error in another, as this court has many a time and oft held could be done, the error in the state's instruction, for which the verdict of this jury is being set aside, was here cured by the instructions granted the appellant.

I do not know what the instructions in Walters v. State, 176 Miss. 790, 170 So. 539, were other than the one set forth in the court's opinion, and consequently do not know whether the court's holding that the error in the instruction was not cured by any other applies here. Moreover, I think the omission of the words "from the evidence" in an instruction to the jury, in view of a juror's oath, and the usual procedure in all trials, is a mere fly speck, for the commission of which it is a rare case that should be reversed.

The judgment of the court below should be affirmed.